BLANK ROME LLP
Attorneys for Defendant-Appellant SATCHUK
RESOURCES INC. d/b/a FOSS MARITIME CO.
The Chrysler Building
405 Lexington Ave
New York, New York 10174-0208
(212) 885-5148
Jeremy J.O. Harwood (JH-9012)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BETHLEHEM STEEL CORPORATION, *et al.*,

                Debtors,

Chapter 11 Case No. 01-15288 (BRL) 01-15302,

-----------------------------------------------------------

BETHLEHEM STEEL CORPORATION, *et al.*,

                Plaintiff,

           v.

SATCHUK RESOURCES INV. d/b/a FOSS
MARITIME CO.,

                Defendant.

Adversary Proceeding No. 03-09315 (MG)

08 CV 7303(DC)

---

## APPELLANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPEAL FROM AN ORDER OF THE BANKRUPTCY COURT DENYING ITS MOTION TO COMPEL ARBITRATION AND STAYING AN ADVERSARY PROCEEDING PENDING ARBITRATION

*Jeremy J.O. Harwood*
*Blank Rome LLP*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

662845.00059/6665821v.1

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT.................................................................................1

BASIS OF APPELLATE JURISDICTION...........................................................1

ISSUES PRESENTED AND STANDARD OF REVIEW .................................1

STATEMENT OF THE CASE................................................................................2
      1.     THE UNDERLYING CONTRACT .................................2
      2.     THE ADVERSARY COMPLAINT ...............................3
      3.     THE HEARING AND DECISION..................................3

ARGUMENT ...........................................................................................................4

POINT I.....................................................................................................................4
  THE ADVERSARY PROCEEDING MUST BE ARBITRATED AS A MATTER OF LAW................................................................................4
    A.    THE FEDERAL ARBITRATION ACT.............................................4

POINT II ...................................................................................................................5
  THE SUPREME COURT HAS MADE CLEAR THAT ARBITRATION AGREEMENTS MUST BE ENFORCED .................................................5

POINT III ..................................................................................................................7
  THE SUPREME COURT PROHIBITS JUDICIALLY CREATED SUBJECT MATTER EXCEPTIONS TO ARBITRABILITY EXCEPT WHERE CONGRESS HAS "EXPRESSLY DIRECTED".....................................7
      1.     SCHERK ....................................................................7
      2.     MITSUBISHI .............................................................8
    A.    THE SUPREME COURT'S VIEW ON BANKRUPTCY LAW "EXEMPTIONS"...........................................................................9
    B.    CONCLUSION...............................................................................10

POINT IV ...............................................................................................................11
  THE ORDER RECOGNIZED THAT THE UNDERLYING CONTRACT CONTAINS A BROAD ARBITRATION PROVISION BUT FAILED TO CONSIDER THE CONSEQUENCES OF THAT HOLDING ...................................11
      1.     THE BROAD CLAUSE..............................................11
      2.     CONSEQUENCES OF A BROAD CLAUSE.............11
      3.     THE BANKRUPTCY COURT FAILED TO CONSIDER WHETHER THE COA IS IMPLICATED ...................................12

i

    4.    CONCLUSION ........................................................................12

POINT V ....................................................................................................13
    BSC'S CREDITORS ARE NOT THE NAMED PLAINTIFFS EVEN IF THEY MAY
    ULTIMATELY BENEFIT FROM A SUCCESSFUL RESULT ..................................13
    A.    ALLEGAERT .....................................................................15

POINT VI....................................................................................................18
    U.S. LINES WAS AN EXCEPTIONAL "MASS TORT" POLICY DECISION AND
    DOES NOT CREATE A DISCRETION OUTSIDE THE SPECIAL
    CIRCUMSTANCES OF THAT CASE .....................................................18

POINT VII ..................................................................................................21
    THE BANKRUPTCY COURT'S CREATION OF A "SEVERE CONFLICT" TEST
    TO CREATE A DISCRETION WHERE NONE HAS BEEN "CLEARLY
    DIRECTED" BY CONGRESS WAS ERRONEOUS..................................21

CONCLUSION .............................................................................................23

662845.00059/6665821v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allegaert v. Perot*, 548 F.2d 432 (2d Cir. 1973) ....................................................... 15

*Allied-Bruce Terminix Cos. v. Dobson*, 513  115 S. Ct. 834, 130 L. Ed. 2d
    753 (1995) ........................................................................................................ 5

*Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty
    Corp.)*, 270 B.R. 99 (S.D.N.Y. 2001) ........................................................... 17,21

*Collins & Aikman Products Co. v. Building System Inc.*, 58 F.3d 16 (2d
    Cir. 1995) ....................................................................................................... 11

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 84 L.
    Ed. 2d 158 (1985) ........................................................................................... 6

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652, 134
    L. Ed. 2d 902 (1996) ....................................................................................... 5

*In re Dollar Corp.*, 139 B.R. 192 (Bankr. E.D. Mich. 1992) ................................... 22

*Edmonds v Compagnie Generale Transatlantique*, 443 U.S. 256, L. Ed. 2d
    521, S. Ct. 2753 (1979) .................................................................................. 10

*In re Financial News Network, Inc.*, 126 B.R. 152 (S.D.N.Y. 1991) ........................ 2

*Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d
    1149 (3d Cir. 1989) ........................................................................... 16,17,19,20

*In re Ionosphere Clubs, Inc.*, 992 F.2d 984 (2d. Cir. 1990) ..................................... 2

*JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cit. 2004) ................... 11

*Keene Corp. v. Fiorelli (In re E. & S. District Asbestos Litigation)*, 14 F.3d
    726 (2d Cir. 1993) ......................................................................................... 20

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*,  88 F.
    Supp. 2d 168 (S.D.N.Y. 2000) aff'd ............................................................... 11

*MBNA America Bank N.A. v. Hill*, 436 F.3d 104 (2d Cir. 2006) ............................ 17

iii

*Midlantic Nat. Bank v. New Jersey D.E.P.*, 474 U.S. 494, 88 L. Ed. 2d 859, 106 S. Ct. 755 (1986) ................................................................................9,10

*Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985) ..........................................................6,8,9

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) ................................................................................6

*Mt. McKinley Insurance Co. et al. v. American Home Assurance Co. et al.*, 399 F.3d 436 (2d Cir. 2005) ............................................................20

*NLRB v. Bildisco*, 465 U.S. 513 (1984) ................................................15

*Palmer v Massachusetts*, 308 U.S. 79, L. Ed. 93, S. Ct. 34 (1939) ........................10

*Pardo v. Akai Electric Co. Ltd. (In re Singer Co. N.V. )*, 2001 U.S. Dist. LEXIS 12902, 2001 WL 984678 (S.D.N.Y. Aug. 27, 2001) ...........................17

*Perry v. Thomas*, 482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987) .............5

*Preston v. Ferrer*, ___ U.S. ___, 128 S. Ct. 978, 169 L. Ed. 2d 917 (2008)............5

*Rochdale Village Inc. v. Public Serv. Employees Union*, 605 F.2d 1290 (2d Cir. 1979) ................................................................................12

*Rodriguez De Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) ................................................................................6

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 41 L. Ed. 2d 270, 94 S. Ct. 2449 (1974) ................................................................................6,8

*In re Seawest Industries, Inc.*, 73 B.R. 946 (W.D. Wash. 1987) ..............................2

*Shearson/American Express v. McMahon*, 482 U.S. 220 (1987) ...........................7

*Societe Nationale Algerienne PourLa Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp.*, 80 B.R. 606 (D. Mass. 1987) ....................19

*Swarts v Hammer*, 194 U.S. 441, L. Ed. 1060, S. Ct. 695 (1904) ..........................10

662845.00059/6665821v.1

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 32 L. Ed. 2d 513, 92 S.
    Ct. 1907 (1972)..................................................................................................7

*In re United States Lines, Inc. et al., United States Lines, Inc. v. American
    S.S. Owners Mutual Protection & Indemnity Association, et al.*, 197
    F.3d 631 (2d Cir. 1999), <u>cert. denied</u>, 513 U.S. 1126, 115 S. Ct. 934,
    130 L. Ed.2d 880 (1999).......................................................................18,19,20

*Vimar Seguros y Reaseguros, S.A. v. M.V. SKY REEFER*, 515 U.S. __, 115
    S. Ct. 571, 132 L. Ed. 2d 461 (1995) ..................................................................7

*Wilko v. Swan*, 346 U.S. 427 (1953) ........................................................................8

## FEDERAL STATUTES

9 U.S.C. § 1 *et seq*.................................................................................................1,19

9 U.S.C. § 3   ...........................................................................................................1,23

9 U.S.C. § 4   ...............................................................................................................4

9 U.S.C. § 5 .................................................................................................................5

9 U.S.C. § 16(a)(1)(A) ................................................................................................1

11 U.S.C. § 544(b) ....................................................................................................16

11 U.S.C. § 547(a)(2)........................................................................................12,13,14

11 U.S.C. § 554(a) ......................................................................................................9

662845.00059/6665821v.1

## PRELIMINARY STATEMENT

SATCHUK RESOURCES INC. d/b/a FOSS MARITIME CO. ("Appellant" or "Foss") submits this Memorandum of Law[1] in support of its appeal from an order denying its motion to compel arbitration and staying trial of the captioned adversary proceeding pending the resolution of the arbitration, after appeal, if any. The motion was brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA").

## BASIS OF APPELLATE JURISDICTION

Appellate jurisdiction of the Bankruptcy Court's order denying an order compelling arbitration and a stay of proceedings pending arbitration (or appeal) is based on 9 U.S.C. § 16(a)(1)(A), (B) and (C).

## ISSUES PRESENTED AND STANDARD OF REVIEW

The issues presented on appeal are:

1.    Did the Bankruptcy Court err in denying Appellant's motion to compel arbitration pursuant to 9 U.S.C. § 1 *et seq.* and also in denying a stay pursuant to 9 U.S.C. § 3?

2.    Did the Bankruptcy Court err in failing to rule that the dispute involves claims or "collateral claims" that implicate the underlying contract and are arbitrable under a broad arbitration agreement.

3.    Did the Bankruptcy Court err in holding that Bethlehem Steel Co. ("BSC" or the "Debtor") was not a party to the arbitration clause in the underlying contract?

---

[1]    Similar appeals are pending before Judge Stein (08 CV 7304) and Judge Swain (08 CV 7306).

1

4.    Did the Bankruptcy Court err in holding that it had a discretion based on a finding of a "severe conflict" with the Bankruptcy Code to overrule the FAA?

5.    Did the Bankruptcy Court abuse its purported discretion to overrule the FAA?

These are all issues of law, which should be reviewed *de novo*. 1 Collier on Bankruptcy ("Collier") (15th ed. rev. 2008), ¶ 3.03[3][b]. ("De novo review may well be the central concept in the administration of the bankruptcy system and the federal courts."); In re Ionosphere Clubs, Inc., 992 F.2d 984, 988-89 (2d. Cir. 1990); In re Financial News Network, Inc., 126 B.R. 152, 154 (S.D.N.Y. 1991); In re Seawest Industries, Inc., 73 B.R. 946, 948 (W.D. Wash. 1987) (*de novo* review of "finding that federal law justified the bankruptcy court's decision to deny enforcement of arbitration provision.")

## STATEMENT OF THE CASE

### 1.    The Underlying Contract

As set out in the affidavit of Jeremy J.O. Harwood sworn to on May 15, 2008 ("Aff.")[2] and the exhibits thereto, which are referred to herein:

> 2.    Foss Maritime Co. entered into a contract of Charter Party with Bethlehem Steel Corp. ("BSC" or "Debtor") dated February 8,2001 (the "Charter"). A true copy is Exhibit A hereto.
>
> 3.    The Charter called for a voyage from Australia to USA.

---

[2]    References to the Exhibits in the Joint Record on Appeal are designated "D_[#]".

2

4.      Pursuant to the terms of the Charter, BSC paid 90% of freight for the cargo loaded on or about June 18, 2001 and the balance of 10% on or about August 24, 2001, along with demurrage accrued on the voyage.

5.      The voyage was completed on July 25, 2001 and payment for which recovery is sought was made within the terms of Charter Clause L(3).

6.      Clause 30 of the Charter contains an arbitration clause stating, in material part:

Any and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force …

Harwood Aff. ¶¶ 2-6.

### 2.      The Adversary Complaint

BSC, through its counsel, filed an adversary complaint on or about September 25, (the "Complaint"). (D#1). The complaint sought, inter alia, to recover payments that had been made upon delivery of the cargo pursuant to the terms of the Charter as "voidable preferences."

Foss answered asserting its right of arbitration as an affirmative defense and that the payments that it had received were, inter alia, in the ordinary course of business and pursuant to the terms of the Charter and that it had, in releasing its maritime liens in exchange for payment, provided "new value." (D# 4)

### 3.      The Hearing And Decision

Foss on or about May 21, 2008 moved to compel BSC arbitrate the Complaint's claims and the defenses thereto (D. #27). The Bankruptcy Court held a hearing on

3

June 25, 2008.[3]  The Bankruptcy Court by written opinion dated July 15, 2008 which was

docketed only in the Bethlehem Steel Corp. v. Moran Towing Corp. 03-92333 (D. #34)

adversary proceeding (Appendix A hereto) denied the motion.  An order of the same date

records the denial (D#34) and application of the Opinion.

Defendant filed a timely appeal on July 22, 2008 (D# 35).

**ARGUMENT**

**POINT I**

**THE ADVERSARY PROCEEDING MUST BE ARBITRATED AS A MATTER OF LAW**

**A.    THE FEDERAL ARBITRATION ACT**

Sections 4 and 5 of the Federal Arbitration Act, 9 U.S.C. § 1, et seq., provide, in

relevant part, as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of
> another to arbitrate under a written agreement for arbitration
> may petition any United States district court which, save for
> such agreement, would have jurisdiction under Title 28, in a
> civil action or in admiralty of the subject matter of a suit
> arising out of the controversy between the parties, for an
> order directing that such arbitration proceed in the manner
> provided for in such agreement.

9 U.S.C. § 4.

*   *   *   *   *   *

> If in the agreement provision be made for a method of naming
> or appointing an arbitrator or arbitrators or an umpire, such
> method shall be followed; but if no method be provided

---

[3]    The transcript was ordered on July 2, 2008.   Despite repeated written and
telephonic requests to Steven Rand of Rand Reporting & Transcription, LLC, the official
court reporter, the transcript is still unavailable.

4

> therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis provided).

## POINT II

### THE SUPREME COURT HAS MADE CLEAR THAT ARBITRATION AGREEMENTS MUST BE ENFORCED

The Supreme Court has strongly supported the purposes of the Federal Arbitration Act. In Preston v. Ferrer, ___ U.S. ___, 128 S. Ct. 978, 169 L. Ed.2d 917, 925 (2008) the Court recently held:

> Section 2 "declare[s] a national policy favoring arbitration" of claims that parties contract to settle in that manner, Southland Corp., 465 U.S., at 10, 104 S. Ct. 852, 79 L. Ed.2d 1. That national policy, we held in Southland, "appli[es] in state as well as federal courts" and "foreclose[s] state legislative attempts to undercut the enforceability of arbitration agreements." Id., at 16, 104 S. Ct. 852, 79 L. Ed. 2d 1. The FAA's displacement of conflicting state law is "now well-established," Allied-Bruce Terminix Cos. v. Dobson, 513 265, 272, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995), and has been repeatedly reaffirmed, see, e.g., Buckeye, 546 U.S., at 445-446, 126 S. Ct. 1204, 163 L. Ed.2d 1038; Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 684-685, 116 S. Ct. 1652, 134 L. Ed.2d 902 (1996); Perry v. Thomas, 482 US. 483, 489, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987). [footnote omitted, emphasis added]

5

In <u>Dean Witter Reynolds Inc. v. Byrd</u>, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158, 165 (1985), the Court stated that the policy underlying the FAA "requires that we rigorously enforce agreements to arbitrate." The Court further stated:

> By its terms, the [FAA] leaves no place for the exercise of discretion by a district court but instead mandates that district courts **shall direct** the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. [emphasis in original]

84 L.Ed. 2d at 163.

See also, <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 24 (1983) ("[9 U.S.C.] Section 2 is a congressional declaration of a liberal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"); <u>Rodriguez De Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477, 483 (1989), ("the party opposing arbitration carries the burden of showing that Congress intended in a separate statute to preclude a waiver of judicial remedies, or that such a waiver of judicial remedies inherently conflicts with the underlying purposes of that other statute.")

That requirement is felt even more forcefully in international commercial agreements:

> As in <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 41 L.Ed.2d 270, 94 S.Ct. 2449 (1974), we conclude that concerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, **even assuming a contrary result would be forthcoming in a domestic context**. [emphasis added].

6

Mitsubishi Motors v. Soler Chrysler-Plymouth, 473 U.S. 614, 629, 87 L.Ed.2d 444, 456-57, 105 S.Ct. 3346 (1985). See also, Vimar Seguros y Reaseguros, S.A. v. M.V. SKY REEFER, 515 U.S. __, 115 S.Ct. 571, 132 L.Ed.2d. 461 (1995) (FAA reflects strong, well-established policy in favor of arbitration); The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9, 32 L.Ed.2d 513, 520, 92 S.Ct. 1907 (1972) ("[w]e cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.")

POINT III

### THE SUPREME COURT PROHIBITS JUDICIALLY CREATED SUBJECT MATTER EXCEPTIONS TO ARBITRABILITY EXCEPT WHERE CONGRESS HAS "EXPRESSLY DIRECTED"

As stated in Domke On Commercial Arbitration (West 3rd ed. 2003) § 7-8, p. 7-50:

> The Supreme Court has seldom found congressional intent to preclude such a waiver [of a judicial forum] and has upheld arbitration agreements relating to claims arising under the Sherman Act, the Securities Exchange Act of 1934, the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), and the Securities Act of 1933. [citing Mitsubishi, supra, Shearson/American Express v. McMahon, 482 U.S. 220 (1987); Rodriguez De Quijas, supra]

We review this case law in respect of international arbitration agreements below.

### 1.    Scherk

In Scherk, supra, the plaintiff, Alberto-Culver, alleged violations of the Securities Exchange Act of 1934. Scherk filed a motion seeking, inter alia, a stay pending ICC arbitration in Paris. The motion was denied and the arbitration enjoined based on the

7

District Court and Seventh Circuit's reliance on <u>Wilko v. Swan</u>, 346 US 427 (1953) denying the arbitrability of claims under the Securities Act of 1933. The majority (by Justice Stewart) distinguished <u>Wilko</u> and commented that a contractual forum selection clause is "an almost indispensable precondition to the orderliness and predictability essential to any international business transaction." 41 L.Ed.2d at 279.

The majority further considered:

> A parochial refusal by the courts of one country, to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages. . . . Whatever recognition the courts of this country might ultimately have granted to the order of the foreign court, <u>the dicey atmosphere of such a legal no man's land would surely damage the fabric of international commerce and trade,</u> and imperil the willingness and ability of businessmen to enter into international commercial agreements.

41 L.Ed 2d at 79-80 (footnote omitted, emphasis added)

It concluded:

> For all these reasons we hold that the agreement of the parties in this case to arbitrate any dispute arising out of their international commercial transaction is to be respected and enforced by the federal courts in accord with the <u>explicit</u> provisions of the Arbitration Act.

41 L.Ed2d at 281 (emphasis added)

### 2.     <u>Mitsubishi</u>

In <u>Mitsubishi Motors</u>, 87 L.Ed.2d at 463, n. 21, the Court stated that the only grounds for not applying the New York Convention are where "subject-matter exceptions" have been "<u>expressly directed</u>" by Congress (emphasis added). Justice

8

Blackmun wrote, in respect of "subordinat[ing] domestic notions of arbitrability to the international policy favoring commercial arbitration":

> In acceding to the Convention the Senate restricted its applicability to commercial matters, in accord with Art I(3). [citations omitted] Yet in implementing the Convention by amendment to the Federal Arbitration Act, **Congress did not specify any matters it intended to exclude from its scope.** [citations omitted] In <u>Scherk</u>, this Court recited Art II(1), including the language relied upon by the Court of Appeals, but paid heed to the Convention delegates' "frequent[ly] voiced concern that courts of signatory countries in which an agreement to arbitrate is sought to be enforced should not be permitted to decline enforcement of such agreements on the **basis of parochial views of their desirability or in a manner that would diminish the mutually binding nature of the agreements.**" [citations omitted] **There, moreover, the Court dealt, arguendo, with an exception to arbitrability grounded in express congressional language; here, in contrast, we face a judicially implied exception. The utility of the Convention in promoting the process of international commercial arbitration depends upon the willingness of national courts to let go of matters they normally would think of as their own. Doubtless, Congress may specify categories of claims it wishes to reserve for decision by our own courts without contravening this Nation's obligations under the Convention. But we decline to subvert the spirit of the United States' accession to the Convention by recognizing subject-matter exceptions where Congress has not expressly directed the courts to do so.** [emphasis added]

87 L.Ed. 2d at 463, n. 21.

A.    **The Supreme Court's View On Bankruptcy Law "Exemptions"**

Similarly, in the domestic context, in <u>Midlantic Nat. Bank v. New Jersey D.E.P.</u>, 474 U.S. 494, 88 L.Ed.2d 859, 106 S.Ct. 755 (1986) the Supreme Court has considered whether 11 U.S.C. § 554(a), empowered a trustee to abandon toxic wastes in

9

contravention of state environmental protection laws. The majority held that the Code's

abandonment authorization did not pre-empt pre-1978 limitations on a trustee's

abandonment power which had been developed by judicially developed doctrine. 88

L.Ed. 2d at 865. The majority's reasoning has equal application to any suggestion that

the Bankruptcy Code pre-empts the New York Convention, as well as the FAA:

> . . . The normal rule of statutory construction is that if
> Congress intends for legislation to change the interpretation
> of a judicially created concept, it makes that intent specific.
> Edmonds v Compagnie Generale Transatlantique, 443 US
> 256, 266-267, 61 L Ed 2d 521, 99 S Ct 2753 (1979). **The
> Court has followed this rule with particular care in
> construing the scope of bankruptcy codifications.** If
> Congress wishes to grant the trustee an extraordinary
> exemption from nonbankruptcy law, "the intention would be
> clearly expressed, not left to be collected or inferred from
> disputable considerations of convenience in administering the
> estate of the bankrupt." Swarts v Hammer, 194 US 441, 444,
> 48 L Ed 1060, 24 S Ct 695 (1904); see Palmer v
> Massachusetts, 308 US 79, 85, 84 L Ed 93, 60 S Ct 34 (1939)
> ("If this old and familiar power of the states [over local
> railroad service] was withdrawn when Congress gave district
> courts bankruptcy powers over railroads, we ought to find
> language fitting for so drastic a change").

88 L. Ed. 2d at 866 [emphasis added].

**B.    Conclusion**

There is nothing in the Bankruptcy Code to suggest that Congress made "so

drastic a change" in enacting the Bankruptcy Code in 1978 either to exempt preference

actions from arbitrability or to grant the Bankruptcy Court, or any Court, the discretion to

abrogate arbitration agreements based on its own view of the undesirability of arbitration

based on its own "parochial views."

10

**POINT IV**

**THE ORDER RECOGNIZED THAT THE UNDERLYING CONTRACT CONTAINS A BROAD ARBITRATION PROVISION BUT FAILED TO CONSIDER THE CONSEQUENCES OF THAT HOLDING**

### 1.    The Broad Clause

The Second Circuit directed in <u>Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,</u> ("<u>Dreyfus</u>"), 88 F. Supp.2d 168 (S.D.N.Y. 2000) <u>aff'd</u>. 252 F.3d 218, 224 (2d Cir. 2001) that to "determine whether a particular dispute falls within the scope of an agreement's arbitration clause, the Court should undertake a three-part inquiry."

The first step is to determine whether the arbitration clause is "broad or narrow." <u>Id</u>. The Bankruptcy Court followed this direction, citing <u>Collins & Aikman Prods. Co. v. Bldg Sys. Inc.,</u> 58 F.3d 16, 18 (2d Cir. 1995) Opinion at 8. It compared the arbitration language in the COA "[a]ny and all differences of whatsoever nature ..." with the "exact language" held to be a broad form clause in <u>JLM Industries, Inc. v. Stolt-Nielsen SA</u>, 387 F.3d 163, 167 (2d Cit. 2004) and held that the COA's arbitration clause was also broad. <u>Id</u>. p. 9.

### 2.    Consequences of A Broad Clause

Under a broad clause there is a "presumption of arbitrability" even of collateral claims. The test for arbitrability of such claims, the Second Circuit stated in <u>Louis Dreyfus</u>, 252 F.3d at 228-29, is whether they:

> 'implicate [   ] issues of contract construction or the parties' rights and obligations under it.' [<u>Citing Collins</u>, 58 F.3d at 23]. This test is more expansive than the one we apply for a

11

narrow arbitration clause, in which the claim 'must on its face' be brought under the terms of the agreement.' [Citing <u>Rochdale Vill Inc. v. Pub. Serv. Employees Union</u>, 605 F.2d 1290, 1295 (2d Cir. 1979).

The <u>Louis Dreyfus</u> Court held that disputes under a letter of indemnity, a collateral agreement, were arbitrable (notwithstanding the English High Court forum section clause in it) because "the rights of Blystaad and the duties of Dreyfus under the charter party," which contained the arbitration agreement, were implicated. <u>Id</u>. at 229.

### 3.    The Bankruptcy Court Failed To Consider Whether The COA Is Implicated

Here a major issue is whether the challenged payments under the Charter were made in accordance with its terms in Special Condition 3.

These factual issues will be dispositive of the Foss's defenses based on payment made "in the ordinary course of business" (11 U.S.C. § 547(a)(2)) and/or a "contemporaneous exchange for new value given to the debtor" or otherwise by release of a maritime lien granted by the Charter.

Assuming, <u>arguendo</u>, that the "dispute" does not fall directly within the broad clause (which is denied) then BSC's claims and Foss's defenses inarguably "implicate" the duties and payment obligations under the Charter so as to be arbitrable.

### 4.    CONCLUSION

The "three-part inquiry" that <u>Louis Dreyfus</u> directs Courts to undertake would have led the Bankruptcy Court to a right of arbitration. Having performed the first inquiry, and determined that the clause was broad, the Bankruptcy Court was obliged to make the "next" inquiry, in respect of a broad clause: test the "presumption of

12

arbitrability." If "issues of contract construction or the parties' rights or obligations under it" were implicated then even if the Debtor's claims were "collateral" to the contract they are arbitrable. The answer to that inquiry under the admittedly "broad" clause was unavoidable. The Charter and in particular special condition 3 are directly implicated.

BSC's claim is arbitrable <u>unless</u> in enacting the Bankruptcy Code there is "an exception to arbitrability grounded in express Congressional language" (<u>Mitsubishi</u>). There is none. Having performed the first part of the inquiry the Bankruptcy Court abandoned its task to avoid a result inimicable to its own views, as stated later in its Opinion (at 17-18), of the failings of arbitration.

The Opinion side-stepped the Second Circuit's clear direction and "test" by avoiding the question in favor of a blanket holding that statutory avoidance actions under the Bankruptcy Code are not arbitrable.

### POINT V

### BSC'S CREDITORS ARE NOT THE NAMED PLAINTIFFS EVEN IF THEY MAY ULTIMATELY BENEFIT FROM A SUCCESSFUL RESULT

The Bankruptcy Court made the following rulings:

(i)     "Avoidance actions ... never belonged to the Debtor, but rather were creditor claims ...", Opinion at 2;

(ii)    "While the pre-petition Debtor was a party to the arbitration agreements, the creditors (or their representatives) were not parties to any arbitration agreement", <u>Id.</u>;

13

(iii)    "Avoidance claims are … statutory claims created in favor of creditors that can only be prosecuted by a trustee or debtor in possession ["DIP"] …", Id. at 12;

(iv)    "Claims that belong exclusively to a trustee or [DIP] belong to creditors who were not parties to the arbitration agreement and, therefore, are not subject to arbitration." Id.

The repeated assertion in the Opinion,[4] sup ra, that because Bankruptcy Code causes of action "belong exclusively to a … [debtor]" they also belong to creditors who "were not parties to any arbitration agreement" is unsupported in fact or law. BSC'S creditors are not the named plaintiffs even if they may ultimately benefit from a successful result. Prior to its bankruptcy petition, and now, BSC could bring other claims under other statutes that would benefit its shareholders and creditors if successful. The fact that statutory causes of action are for the benefit of a corporation's creditors (including shareholders as the lowest priority creditor) is irrelevant.

In short, rather than permit the Louis Dreyfus inquiry direct the result the Bankruptcy Court declared a new exception:

> Statutory avoidance claims that belong to the trustee or debtor in possession are not subject to the Debtor's arbitration agreements.

Opinion at 18.

That judicially created exception to arbitrability was said to be based on two cases, examined below. Id.

---

[4]    During the course of oral argument the Bankruptcy Court sought an admission that BSC itself could not bring the preference claims. This was denied not least because BSC is the named plaintiff.

14

A.    **ALLEGAERT**

In <u>Allegaert v. Perot</u>, 548 F.2d 432, 434 (2d Cir. 1973), the District Court had ordered the bankruptcy trustee to arbitrate its claims that the defendants had violated the Bankruptcy Act, the Securities Exchange Act (1934); Securities Act (1933); and various states' laws as well as common law.  The defendants asserted that the trustee was bound by the debtor's arbitration agreements contained, <u>inter alia</u>, in the constitution of the NYSE and AMEX.

On appeal the "trustee's principal contentions ... are that he is not the same entity as the bankrupt ... and is therefore not bound by the latter's executory arbitration contracts ...".  <u>Id</u>. at 435,  The Second Circuit agreed that the "trustee's position that he and the bankrupt are different legal entities is certainly correct." <u>Id</u>.  The "lack of identity" was said to be "particularly important here" because the "statutory causes of action" under the Bankruptcy Act belonged to the "new entity" suing for the "benefit of [Debtor's] creditors" and since the "trustee stands in the creditors' shoes ... he should not be compelled to arbitrate these claims." [citation omitted].  548 F.2d at 436.  The Court also held that the Securities Law counts, within the "uncertain" availability of discovery "further supports the need for a judicial tribunal here." <u>Id</u>. at 437.

The "new entity" theory has been roundly rejected. <u>See</u>, <u>NLRB v. Bildisco</u>, 465 U.S. 513, 528 (1984) ("If the [DIP] were a wholly 'new entity' [from the pre-petition debtor] it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place").  The pre-petition and post-petition debtor-in-possession corporation, (or "DIP") remain one and

15

the same. Clearly, therefore, there can be no principled basis for asserting BSC as DIP and in filing its Complaint is a different corporation from the BSC that is party to the arbitration agreement.

The Bankruptcy Court also relied on <u>Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 885 F.2d 1149 (3d Cir. 1989). The Third Circuit held the trustee of the debtor in bringing claims under 11 U.S.C. § 544(b)[5] entitled "Trustee as a lien creditor and as a successor to certain creditors and purchasers" that:

> Claims asserted by the trustee under Section 544(b) are not derivative of the bankrupt. They are <u>creditor claims</u> that the Code authorizes the trustee to assert on their behalf .... Thus there is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it.

885 F.2d at 1155.

Section 547 does <u>not</u> authorize the trustee or DIP to bring claims that "belong to" or are "creditor claims," as expressly provided for in Section 544. Section 544 takes away certain creditor's rights of action and gives them to the trustee/DIP to assert. As stated in 3 Collier Bankruptcy Manual (3rd ed. 2008) § 544-02 at 544-5:

> Subsection (b) gives the trustee the power to avoid transfers or obligations of the debtor that are avoidable by <u>an actual, existing unsecured creditor</u> under nonbankruptcy law. (emphasis added)

---

[5]  Section 544(b) provides: Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

16

This distinction is paramount. The "actual" creditor that the DIP replaces is not a party to an arbitration agreement.

Moreover, the Bankruptcy Court failed to comment on <u>Hays'</u> other observation:

> . . . it is clear that in 1984 Congress did not envision all bankruptcy related matters being adjudicated in a single bankruptcy court.

885 F.2d at 1157 (footnote omitted).

The Third Circuit also held:

> Where, as here, a trustee seeks to enforce a claim inherited from the debtor in an adversary proceeding in a district court, we perceive no adverse effect on the underlying purposes of the Code from enforcing arbitration -- certainly no adverse effect of sufficient magnitude to relieve a district court of its mandatory duty under the Arbitration Act as interpreted in the recent case law.

In finding authority in <u>Hays</u> to create new law the Bankruptcy Court ignored <u>MBNA America Bank N.A. v. Hill</u>, 436 F.3d 104, 110 (2d Cir. 2006) where arbitration of the debtor's adversary proceeding for breach of the automatic stay and unjust enrichment was granted because "arbitration of Hill's § 362(h) claim would not jeopardize the important purposes that the automatic stay serves." The Court recognized that:

> District courts have often reversed bankruptcy decisions refusing to compel arbitration of core bankruptcy matters and granted motions to arbitrate core claims on the grounds that arbitration would not interfere with or affect the distribution of the estate. <u>See</u>, <u>e.g.</u>, <u>Cibro Petroleum Prods., Inc. v. City of Albany (In re Winimo Realty Corp.)</u>, 270 B.R. 99 (S.D.N.Y. 2001); <u>Pardo v. Akai Elec. Co. Ltd. (In re Singer Co. N.V. )</u>, 2001 U.S. Dist. LEXIS 12902, No. 00 Civ. 6793 LTS, 2001 WL 984678 (S.D.N.Y. Aug. 27, 2001); <u>Bigelow v. Green Tree Fin. Servicing Corp.</u>, No. CV-00-6644, 2000 WL 33596476 (E.D. Cal. Nov. 30, 2000).

17

\*     \*     \*

> While the automatic stay is surely an important provision of the Bankruptcy Code, there is no indication from the statute that any dispute relating to an automatic stay should categorically be exempt from resolution by arbitration.

> Arbitration of Hill's automatic stay claim would not necessarily jeopardize or inherently conflict with the Bankruptcy Code. We hold that the bankruptcy court did not have discretion to deny the motion to stay or dismiss the proceeding in favor of arbitration.

463 F.3d at 109-111.

The Bankruptcy Court's Opinion is unsupported by Supreme Court or Second Circuit authority.

## POINT VI

### U.S. LINES WAS AN EXCEPTIONAL "MASS TORT" POLICY DECISION AND DOES NOT CREATE A DISCRETION OUTSIDE THE SPECIAL CIRCUMSTANCES OF THAT CASE

The Second Circuit in In re United States Lines, Inc. et al., United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n, et al., 197 F.3d 631 (2d Cir. 1999), cert. denied, 513 U.S. 1126, 115 S. Ct. 934, 130 L. Ed.2d 880 (1999), considered the Debtors' obligation to arbitrate its request for a declaratory judgment in respect of a number of insurance policies containing arbitration provisions. The policies, the Court noted, had been held by the District Court to be the debtor's "most important asset" from which to satisfy potentially 18,000 asbestos-related injury claims:

> The insurance proceeds are almost entirely earmarked for paying the personal injury claimants and represent the only potential source of cash available to that group of creditors.

18

197 F.3d at 638.

In the context of a "mass tort" the Court reviewed the Debtors' obligation to arbitrate and "[a]nnulment of the arbitration clauses." The Court noted the strong "preference" for recognition of "international arbitration agreements." [citing Mitsubishi]. Id. at 639. It then reviewed the various Code provisions before stating that "Congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override even international arbitration agreements." Id. at 640 [emphasis added]. The Court stated:

> Thus, there will be occasions where a dispute involving both the Bankruptcy Code, 11 U.S.C. § 101 et seq. and the Arbitration Act, 9 U.S.C. § 1 et seq., "presents a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." Societe Nationale Algerienne PourLa Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp., 80 B.R. 606, 610 (D. Mass. 1987).

197 F.3d at 640.

The Court distinguished between core and non-core proceedings:

> Such a conflict is lessened in non-core proceedings which are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration. See Hays & Co., 885 F.2d at 1161. Core proceedings implicate more pressing bankruptcy concerns, but even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration. . . .

Id.

It pronounced the test as being:

19

In exercising its discretion over whether, in core proceedings, arbitration provisions ought to be denied effect, the bankruptcy court must still "carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause." <u>Hays & Co.</u>, 885 F.2d at 1161. The Arbitration Act as interpreted by the Supreme Court dictates that an arbitration clause should be enforced "unless [doing so] would seriously jeopardize the objectives of the Code." <u>Id</u>.

*    *    *

In the instant case, the declaratory judgment proceedings are integral to the bankruptcy court's ability to preserve and equitably distribute the Trust's assets. Furthermore, as we have previously pointed out, <u>the bankruptcy court is the preferable venue in which to handle mass tort actions</u> involving claims against an insolvent debtor. See <u>Keene Corp. v. Fiorelli (In re E. & S. Dist. Asbestos Litig.)</u>, 14 F.3d 726, 732 (2d Cir. 1993). <u>The need for a centralized proceeding is further augmented by the complex factual scenario, involving multiple claims, policies and insurers.</u> The bankruptcy court was not clearly erroneous in finding that "arbitration of the disputes raised in the Complaint would prejudice the Trust's efforts to preserve the Trust as a means to compensate claimants." <u>U.S. Lines I</u>, 169 B.R. at 825. It was within the bankruptcy court's discretion to refuse to refer the declaratory judgment proceedings, which it properly found to be core, to arbitration.

197 F.3d at 640-41. [emphasis added]

The <u>U.S. Lines</u> decision rests on the facts of that case; a "mass tort," a "complex factual scenario," and the subject matter being the "only potential source of cash" for recovery. There was no discussion of Treaty obligations or the precedent for other signatory nations to create "policy" exceptions by "implied exceptions" to deny U.S. citizens' rights under this treaty. As the Court held in <u>Mt. McKinley Insurance Co. et al. v. American Home Assurance Co. et al.</u>, 399 F.3d 436, 449 (2d Cir. 2005).

20

> While it is true that <u>United States Lines</u> does not explicitly limit its holding to insurance policies wholly owned by the debtor or even to the debtor's interest in the insurance policy, <u>that limitation implicitly existed and distinguishes this case.</u> [emphasis added]

The Scheduling Order entered in this action expressly required the parties to consider the use of alternative dispute resolution ("ADR"). Whether Defendant's receipt of payments under the Charter was, <u>inter alia,</u> in the normal course of its and/or the shipping business is a dispute that New York maritime arbitrators are well able to decide. BSC did argue or present <u>any</u> evidence that using ADR, as it contracted to do, as opposed to ADR, as it may still agree to do under the Bankruptcy Court's order, jeopardizes any underlying policy of the Code. The facts of the adversary proceeding, which does not involve any "mass tort" or the "only potential source of recovery," render <u>U.S. Lines</u> distinguishable. <u>See, In re Winimo Realty Co., Cibro Petroleum Products Inc. v. City of Albany et al.,</u> 270 B.R. 108, 123 (S.D.N.Y. 2001) ("no evidence that arbitration would jeopardize an underlying policy of the Bankruptcy Code [so that] the Bankruptcy Court lacked the discretion to proceed to trial" of debtor's adversary complaint).

**POINT VII**

**THE BANKRUPTCY COURT'S CREATION OF A "SEVERE CONFLICT" TEST TO CREATE A DISCRETION WHERE NONE HAS BEEN "CLEARLY DIRECTED" BY CONGRESS WAS ERRONEOUS**

Where Congress has not "clearly directed" that there are subject matter exceptions to arbitration, and specifically did not do so in enacting the Bankruptcy Code, the

21

assertion that a discretion exists, let alone exercise of that purported discretion, is clearly erroneous.

Moreover, BSC having, through a series of counsel, failed to prosecute its cause of action for seven years cannot assert any claim of inconvenience.  To the contrary, as recognized by the Court in In re Dollar Corp., 139 B.R. 192, 197 (Bankr. E.D. Mich. 1992):

> . . . if this Court rules against [Korean] arbitration . . . "the appeals would begin almost immediately" **... this issue may even be subject to Supreme Court review given the importance of the issue of international arbitration in a bankruptcy context and the fact that the Supreme Court has yet to address this issue in that context.**  These appeals could delay trial or arbitration ... for a couple of years. [emphasis added]

22

## CONCLUSION

Defendant respectfully requests that the Court issue an Order (1) reversing the Bankruptcy Court; (2) compelling arbitration of the Adversary Proceeding pursuant to the terms of the arbitration clause in Charter and (3) staying the Adversary Proceeding pursuant to 9 U.S.C. § 3 and (4) granting such other and further relief as may be just and proper.

Dated: New York, New York
September 2, 2008

Respectfully submitted,

BLANK ROME LLP
Attorneys for Defendant-Appellant

By: _____

Jeremy J.O. Harwood (JH-9012)
A Member of the Firm
405 Lexington Avenue
New York, New York 10174
(212) 885-5000

23

# APPENDIX A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re                                                    :
                                                         :
BETHLEHEM STEEL CORP., et al.                            :       Chapter 11
                                                         :       Case Nos. 01-15288 through
                                                         :       01-15302, 01-15308 through
                                                         :       01-15315 (BRL)
                                            Debtors.     :
                                                         :
-----------------------------------------------------------------x
                                                         :
BETHLEHEM STEEL CORP.                                    :
                                                         :       Adv. Pro. 03-92333 (MG)
                                            Plaintiff,   :
                                                         :
                     - against -                         :
                                                         :
MORAN TOWING CORP.,                                      :
                                                         :
                                            Defendant    :
-----------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER DENYING FOUR SEPARATE MOTIONS TO COMPEL ARBITRATION

**A P P E A R A N C E S:**

BLANK ROME, LLP
405 Lexington Avenue
New York, NY 10174
By:  Jeremy O. Harwood

*Counsel for Defendants Moran Towing Corp., Coeclerici Transport Panamax, Ltd., and Satchuk Resources, Inc. D/B/A Foss Maritime Co.*

GAZES, LLC
32 Ave. of the Americas, 27th Floor
New York, NY  10013
By:  Eric Wainer

*Counsel to Bethlehem Steel Corp. Liquidating Trust, as successor in interest to Plaintiff Bethlehem Steel Corp.*

**MARTIN GLENN**
**United States Bankruptcy Judge**

Before the court are four motions to compel arbitration in four separate adversary proceedings being prosecuted by Bethlehem Steel Corporation Liquidating Trust ("Plaintiff" or "Liquidating Trust"), as the successor in interest to Bethlehem Steel Corporation, against Defendants Moran Towing Corp. ("Moran") (Adv. No. 03-92333), Coeclerici Transport Panamax Ltd. ("Coeclerici") (Adv. Nos. 03-92536, 03-92538), and Satchuk Resources Inc. D/B/A Foss Maritime Co. ("Satchuk") (Adv. No. 03-09315) (collectively "Defendants"). Each of the actions assert statutory avoidable preference claims pursuant to 11 U.S.C. §§ 547 and 550. The Defendants in each of these cases are represented by the same counsel and have filed nearly identical motions to compel arbitration. As all four of the arbitration agreements in question use the same language, all four motions to compel arbitration will be resolved in this opinion.[1] The Defendants contend that the avoidance actions are subject to mandatory arbitration. The Plaintiff contends that the avoidance actions are not subject to arbitration.

For the reasons set forth below, all four motions to compel arbitration are denied. Avoidance actions brought pursuant to the Bankruptcy Code never belonged to the Debtor, but rather were creditor claims that could only be brought by a trustee or debtor in possession, or, as in this case, by the Liquidating Trust by assignment under a confirmed plan. While the prepetition Debtor was a party to the arbitration agreements, the creditors (or their representatives) were not parties to any arbitration agreement. Thus, the avoidance actions are not subject to the arbitration agreements.

---

[1]    This opinion is being entered in the Moran case. The other three actions are being disposed of by the entry of separate orders incorporating this opinion by reference.

## **BACKGROUND**

On October 15, 2001, Bethlehem Steel Corporation and its debtor subsidiaries ("Debtor") commenced voluntary cases under chapter 11 in this court. The Debtor's plan of liquidation, approved by the Court on October 22, 2003, formed the Bethlehem Steel Corporation Liquidating Trust, and provided that all avoidance actions, defined as "any actions commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code," would be transferred from the Debtor to the Liquidating Trust on the effective date of the plan free and clear of all liens and encumbrances. Case No. 01-15288, ECF Doc. #'s 1553, 1554. The Debtor commenced all of these adversary proceedings before the confirmation of the liquidation plan. Accordingly, Plaintiff has prosecuted these adversary proceedings pursuant to 11 U.S.C. § 547 seeking to avoid preferential transfers, and 11 U.S.C. § 550 directing Defendants to pay the Liquidating Trust for the benefit of Debtor's creditors. In each adversary proceeding the Plaintiff asserted that all necessary requirements were met for avoiding a transfer under 11 U.S.C. § 547(b): the challenged transfers were "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made − (A) on or within 90 days before the date of the filing of the petition; . . . and (5) that enable[d] such creditor to receive more than such creditor would receive if − (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

3

The case against Satchuk was filed on September 25, 2003. Adv. No. 03-09315, ECF Doc. # 1. The case against Moran and the two cases against Coeclerici were filed on October 14, 2003. Adv. No. 03-92333, ECF Doc. # 1; Adv. No. 03-92536, ECF Doc. # 1; Adv. No. 03-92538, ECF Doc. # 1. In each answer, the Defendants denied that the transfers could be avoided under section 547 and asserted numerous affirmative defenses, including that the transfers were contemporaneous exchanges to the creditors for new value; that the Debtor was not insolvent at the time of the transfers; that the transfers were made in the ordinary course of business on ordinary business terms; and that these disputes are subject to binding arbitration.

These four Bethlehem Steel adversary proceedings – along with over 1300 similar Bethlehem Steel avoidance actions – were transferred to me in August 2007. Adv. No. 03-92333, ECF Doc. # 19; Adv. No. 03-09315, ECF Doc. # 19; Adv. No. 03-92536, ECF No. Doc. # 24; Adv. No. 03-92538, ECF Doc. # 24. Case Management and Scheduling Orders were entered in the Moran and Satchuk cases on October 1, 2007. Adv. No. 03-92333, ECF Doc. # 21; Adv. No. 03-09315, ECF Doc. # 21. The First Amended Case Management Scheduling Orders entered on January 4, 2008 in both cases provided that all fact and expert discovery shall be completed no later than May 5, 2008. Adv. No. 03-92333, ECF Doc. # 25; Adv. No. 03-09315, ECF Doc. # 25. The Case Management and Scheduling Orders for the two Coeclerici adversary proceedings were entered on February 20, 2008 and provided that all fact and expert discovery shall be completed no later than May 6, 2008. Adv. No. 03-92536, ECF Doc. # 29; Adv. No. 03-92538, ECF Doc. # 30. The Defendant's motions to compel arbitration were filed on May 21, 2008.[2]

---

[2]    Thus, the Defendants waited more than four years after these cases were filed to file their motions to compel arbitration, only after the close of the period for all fact and expert discovery. The Plaintiff has

4

Adv. No. 03-92333, ECF Doc. # 27; Adv. No. 03-09315, ECF Doc. # 27; Adv. No. 03-92536, ECF Doc. # 31; Adv. No. 03-92538, ECF Doc. # 32.

As Coeclerici is an Italian company, the two motions concerning it were brought pursuant to the New York Convention, a treaty of the United States stating that "[t]he Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter." 9 U.S.C. § 201. The motions concerning Moran and Satchuk, both domestic companies, were brought under the Federal Arbitration Act, 9 U.S.C. § 2.

A further discussion of the facts pertaining to each of the four separate adversary proceedings is set forth below.

*Moran Towing Co., Adv. No. 03-92333:*

Moran and the Debtor entered into an agreement on August 24, 2000 ("Moran COA"), wherein Moran agreed to transport coal by barge and tug for the Debtor. Adv. No. 03-92333, ECF Doc. # 7, at 1. Moran obtained a lien on the cargo carried for freight and demurrage pursuant to clause 25 of the Moran COA. *Id.* The Plaintiff seeks to recover payments made to Moran between July 17, 2001 and September 21, 2001, totaling $340,163.51. Adv. No. 03-92333, ECF Doc. # 1, Exh. A.

The arbitration clause of the Moran COA provides that "[a]ny and all differences and disputes . . . of whatsoever nature arising out of this Agreement shall be put to arbitration in the City of New York, pursuant to the laws relating to arbitration there in force." Adv. No. 03-92333, ECF Doc. # 7, Exh. A, ¶ 31.

---

not argued that Defendants waived their rights to compel arbitration, or are otherwise estopped by laches from seeking to compel arbitration. Therefore, the Court does not address such issues here.

*D/B/A Foss Maritime, Adv. No. 03-09315:*

Satchuk entered into a contract of Charter Party with the Debtor on February 8, 2001 (the "Charter"). Adv. No. 03-09315, ECF Doc. # 27, Exh. A. The Charter called for a voyage from Australia to the United States, for which the Debtor paid 90% of freight for the cargo loaded on June 18, 2001 and the balance and accrued demurrage[3] on August 24, 2001. Adv. No. 03-09315, ECF Doc. # 27, Aff., ¶¶ 3, 4. The Plaintiff seeks to recover these payments in the amount of $102,714.15. Adv. No. 03-09315, ECF Doc. # 1, Exh. A.

Clause 30 of the Charter provides that "[a]ny and all differences of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force . . . ." Adv. No. 03-09315, ECF Doc. # 27, Exh. A.

*Coeclerici Transport Panamax Ltd., Adv. No. 03-92536:*

Coeclerici and the Debtor entered into a contract of affreightment on February 11, 2000 ("Coeclerici COA"). ECF Doc. # 31, Exh. A. The Coeclerici COA provided that Coeclerici would provide vessels for the carriage of seven cargoes, in addition to an optional cargo. Adv. No. 03-92536, ECF Doc. # 31, at 1. The Coeclerici COA provided Coeclerici with a lien on cargo for freight and demurrage. ECF Doc. # 31, Exh. A, ¶ 18. The payments at issue in the complaint, relating to four vessels under the Coeclerici COA, total $1,477,501.22. Adv. No. 03-92536, ECF Doc. # 1, Exh. A.

---

[3]     Demurrage is defined as "[l]iquidated damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by the agreed time." BLACK'S LAW DICTIONARY (8th ed. 2004).

The Coeclerici COA's arbitration clause provides that "[a]ny and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force." Adv. No. 03-92536, ECF Doc. # 31, Exh. A, ¶ 30.

*Coeclerici Transport Panamax Ltd., Adv. No. 03-92538:*

The second Coeclerici adversary proceeding is governed by the same contract of affreightment as the first, the Coeclerici COA.[4] Coeclerici and the Debtor entered into the Coeclerici COA on February 11, 2000. Adv. No. 03-92538, ECF Doc. # 32, Exh. A. The Debtor renewed the Coeclerici COA in 2000, pursuant to clause 17, with a different entity, Coeclerici Transport Cape Size Ltd. Adv. No. 03-92538, ECF Doc. #32, Exh. B. The Coeclerici COA provided Coeclerici with a lien on cargo for freight and demurrage. Adv. No. 03-92538, ECF Doc. # 32, Exh. A, ¶ 18. The payments at issue relate to two vessels under the Coeclerici COA and total $1,540,908.24. Adv. No. 03-92538, ECF Doc. # 1, Exh. A.

## DISCUSSION

When determining whether to compel arbitration and stay proceedings pending arbitration a court must undertake a multi-step process:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the

---

[4]    As Adv. No. 03-92538 is governed by the same agreement as Adv. No. 03-92536, the arbitration clause at issue in both proceedings is the same, providing that "[a]ny and all differences and disputes of whatsoever nature arising out of this charter shall be put to arbitration in the City of New York pursuant to the laws relating to arbitration there in force." Adv. No. 03-92538, ECF Doc. # 31, Exh. A, ¶ 30.

claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998).

It is undisputed that the Debtor entered into separate arbitration agreements with the three Defendants. Therefore, the next step requires the Court to determine the scope of each of these agreements.

### A.    The Broad vs. Narrow Distinction

Analyzing the scope of the arbitration agreements requires that a court first determine whether the clause is broad or narrow. *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) ("First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow."); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("[A] court should decide at the outset whether the arbitration agreement [is] broad or narrow.") (quoting *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983)) (internal quotations omitted).

In *Collins*, the Second Circuit explained the relevance of the distinction between broad and narrow clauses:

> In construing arbitration clauses, courts have at times distinguished between 'broad' clauses that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that limit arbitration to specific types of disputes. If a court concludes that a clause is a broad one, then it will order arbitration and any subsequent construction *of the contract and of the parties' rights and obligations under it* are within the jurisdiction of the arbitrator.

*Collins*, 58 F.3d at 21 (citing *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988)) (emphasis in original). With clauses determined to be

8

narrow form clauses, "a court considering the appropriate range of arbitrable issues must

consider whether the question at issue is on its face within the purview of the clause."

*McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.,* 858 F.2d 825, 832 (2d Cir.

1988).

In *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 167 (2d Cir. 2004), the

Second Circuit held that a clause submitting for arbitration "[a]ny and all differences and

disputes of whatsoever nature arising out of this Charter" was a broad form clause.  The

clauses at issue in these adversary proceedings require arbitration of "[a]ny and all

differences and disputes, of whatsoever nature arising out of this charter."[5]  Adv. No. 03-

92536, ECF Doc. # 31, Exh. A, ¶ 30; Adv. No. 03-92538, ECF Doc. # 31, Exh. A, ¶ 30;

Adv. No. 03-09315, ECF Doc. # 27, Exh. A.  As this is the exact language of the clause

in *JLM* that the Second Circuit held to be broad, the clauses in these four adversary

proceedings should also be treated as broad form clauses.  Therefore, under the *Collins*

decision there is "a presumption of arbitrability." *Collins,* 58 F.3d at 23.  However, even

with a broad form clause, if the claims present "no questions in respect of the parties'

rights and obligations under [the agreements]," they are outside the purview of the

arbitration clause and are not arbitrable.  *Id.*

**B.      Are the Preferential Transfer Claims Within the Scope of the
         Arbitration Agreement?**

In this Circuit, courts have exempted fraudulent transfer claims from arbitration

because they are statutory claims belonging to the trustee and are not claims derivative of

---

[5]      The Moran Towing clause uses the phrase "arising out of this Agreement," whereas all other
clauses use the term "charter."  Adv. No. 03-92333, ECF # 7, Exh. A, ¶ 31.  This is the only discernible
difference between the texts of the four clauses.

the debtor's own rights. *Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir. 1977);

*Hagerstown Fiber Ltd. P'ship v. Carl C. Landegger,* 277 B.R. 181 (Bankr. S.D.N.Y.

2002) (granting motion to compel arbitration of fraud claims, but not fraudulent transfer

claims brought pursuant to section 544(b) of the Bankruptcy Code). In *Allegaert*, the

district court granted the defendants' motion to stay the trustee's action against 20

defendants and required that the claims be arbitrated. The trustee's complaint included

fraudulent transfer claims brought under the Bankruptcy Act and various claims for

alleged securities violations. The Court of Appeals reversed and remanded, specifically

concluding that the fraudulent transfer claims were not subject to arbitration. *Allegaert,*

548 F.2d at 435-36. The fraudulent transfer claims were exempted from arbitration

because they are "statutory causes of action belonging to the trustee, not to the bankrupt,

and the trustee asserts them for the benefit of the bankrupt's creditors, whose rights the

trustee enforces." *Id.* at 436. *Allegaert* speaks directly to fraudulent transfer claims that

may be brought by a trustee, concluding that such claims are not subject to mandatory

arbitration pursuant to a debtor's prepetition arbitration agreement. *Id. See also* 11

U.S.C. § 547(b) ("The trustee may avoid any transfer of an interest of the debtor in

property . . . ."). But under section 1107 of the Code, a debtor in possession functions in

the same way as a trustee for purposes of bringing avoidance actions: "a debtor in

possession shall have all the rights, and powers, and shall perform all the functions and

duties . . . of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). A

liquidating trust that obtains the rights to pursue avoidance actions is likewise not bound

by an arbitration clause entered into by the prepetition debtor. *See OHC Liquidation*

*Trust v. American Bankers Insurance Co. (In re Oakwood Homes Corp.),* 2005 WL

10

670310, at *4 (Bankr. D. Del. 2005) (holding that a liquidating trust established by a chapter 11 debtor to bring actions to avoid fraudulent and preferential transfers was not bound by an agreement between defendants and the debtor to arbitrate disputes, as the trustee of the liquidating trust was bringing the avoidance actions on behalf of creditors).

Defendants argue that *Allegaert* is not controlling because it was decided under the Bankruptcy Act, before the adoption of the Bankruptcy Code in 1978. However the Defendants have not pointed to any changes between the Act and the Code that would lead to a different result. While the present Bankruptcy Code includes substantial amendments to sections 547 and 550 from their pre-1978 Bankruptcy Act counterparts, none of those changes alters in any way the underlying rationale of *Allegaert* that exempts statutory avoidance claims from arbitration.

Defendants also argue that since *Allegaert's* holding that securities claims are not arbitrable has subsequently been rejected by the Supreme Court, *see Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987) (holding that claims brought under section 10(b) of the Securities Exchange Act and RICO claims were arbitrable), *Allegaert's* holding that fraudulent conveyance claims are not arbitrable has also been undermined. The Supreme Court and the Second Circuit have clearly expanded the range of claims that are subject to arbitration since *Allegaert* was decided. *See Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) (holding that a predispute agreement to arbitrate Securities Act of 1933 claims was enforceable); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (holding that antitrust claims arising out of an international commercial transaction were arbitrable despite the fact that they were not specifically mentioned in the arbitration clause);

11

*MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 110 (2d Cir. 2006) (holding that a post-discharge claim for violation of the automatic stay was arbitrable because it "would not necessarily jeopardize or inherently conflict with the Bankruptcy Code"). However, none of those decisions undermines the basis for *Allegaert's* holding that statutory avoidance claims are not subject to arbitration. Avoidance claims are not derivative of the debtor's rights; rather, they are statutory claims created in favor of creditors that can only be prosecuted by a trustee or debtor in possession, or as in this case, by the Liquidating Trust as assignee under Debtor's confirmed chapter 11 plan. Claims that are derivative of a debtor's rights may be subject to arbitration. Claims that belong exclusively to a trustee or debtor in possession belong to creditors who were not parties to the arbitration agreement and, therefore, are not subject to arbitration. Decisions post-dating *Allegaert* make this distinction very clear. Defendants have failed to find any reported decisions supporting their argument that statutory avoidance claims are subject to arbitration.

In a decision rendered well after enactment of the Bankruptcy Code, the Third Circuit followed *Allegaert's* reasoning in *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3d Cir. 1989), refusing to compel arbitration of fraudulent transfer claims while compelling arbitration of various state and federal securities claims. The *Hays* court acknowledged that "*Allegaert* was decided before the enactment of the Bankruptcy Reform Act of 1978, the 1984 Amendments, and the above-cited recent Court decisions reaffirming the strong federal policy favoring arbitration." *Hays* 885 F.2d at 1154 n.8 (citing *Rodriguez de Quijas*, 490 U.S. 477; *McMahon*, 482 U.S. 220; *Mitsubishi Motors*, 473 U.S. 614). Based on the changes in the law since *Allegaert*, the court rejected the argument that the trustee was not generally bound by the arbitration

12

clause in that case, but the court distinguished the fraudulent transfer claims, holding that

such claims are not arbitrable:

> Claims asserted by the trustee under section 544(b) are not derivative of the
> bankrupt. They are creditor claims that the Code authorizes the trustee to assert
> on their behalf. The Supreme Court has made it clear that it is the *parties* to an
> arbitration agreement who are bound by it and whose intentions must be carried
> out. Thus there is no justification for binding creditors to an arbitration clause
> with respect to claims that are not derivative from one who was a party to it.

*Hays,* 885 F.2d at 1155 (citing *Mitsubishi Motors,* 473 U.S. at 625) (emphasis in

original).

Relying on *Allegaert* and *Hays,* Chief Judge Bernstein reached this same

conclusion in *Hagerstown,* 277 B.R. 181, a case also controlled by the Bankruptcy Code:

> A trustee in bankruptcy wears two hats. First, he stands in the shoes of the debtor,
> and may bring any suit that the debtor could have brought before bankruptcy.
> When the trustee sues as successor to the debtor, his rights are limited to the same
> extent as the debtor's under applicable non-bankruptcy law. If the debtor agreed
> in a pre-petition contract to arbitrate a dispute, the trustee, suing as successor to
> the debtor, is likewise bound by the arbitration clause.
>      . . . .
> Section 544(b), however, puts the trustee in the creditors' shoes, and allows him
> to assert claims that only they could assert outside bankruptcy. The claims
> inherited from the creditors are not arbitrable for the reasons explained in
> *Allegaert* . . . .

*Id.* at 206-07 (citations omitted).

*Allegaert, Hays* and *Hagerstown* all involved fraudulent transfer claims.

Specifically addressing the arbitrability of preferential transfer claims brought under

section 547 of the Bankruptcy Code, the court in *OHC Liquidation,* 2005 WL 670310, at

*4, ruled that it was "entirely appropriate" to equate preferential transfers with fraudulent

transfers as core proceedings belonging to the trustee and not derivative of the debtor.

*See also Pardo v. Pacificare of Tex., Inc. (In re APF Co.),* 264 B.R. 344, 363 (Bankr. D.

Del. 2001) (holding that preferential transfer claims brought under section 547 are not arbitrable).

The *Hays* court's reasoning that "there is no justification for binding creditors to an arbitration clause with respect to claims that are not derivative from one who was a party to it" is in line with the aims of the Federal Arbitration Act as interpreted by the Supreme Court. *Hays*, 885 F.2d at 1155. *Mitsubishi Motors* held that "[t]he first task of a court asked to compel arbitration of a dispute is to determine whether *the parties* agreed to arbitrate that dispute." *Mitsubishi Motors*, 473 U.S. at 625 (emphasis added). The claims sought to be arbitrated here were neither extant, nor capable of being brought by the Debtor at the time the Coeclerici COA, the Moran COA, or the Charter were signed. These claims are not derivative of the Debtor but belong to the Plaintiff, as the assignee of the statutory avoidance claims that belonged to the debtor in possession.

Accordingly, the Court believes that the well-settled law in this Circuit (at least since the decision in *Allegaert*), subsequently followed by the Third Circuit in *Hays*, and by other lower courts, including by Chief Judge Bernstein in this court in *Hagerstown*, necessarily requires that the motions to compel arbitration of statutory avoidance claims be denied. As the court held in *OHC Liquidating Trust*, statutory preference avoidance claims are analogous to the fraudulent transfer claims that were addressed in *Allegaert*, *Hays*, and *Hagerstown*. The same rationale for denying arbitration applies to preference claims. They are not claims that are derivative of debtor's rights; they can only be brought by a trustee or debtor in possession or one of their assignees, none of whom were parties to the arbitration agreement; and, therefore, preference avoidance claims are not subject to arbitration.

14

### C.    Discretion to Deny Arbitration

As explained above, the Court has concluded that the statutory preference avoidance claims are not covered by the arbitration clauses involved in these adversary proceedings. But even if these claims were covered by the broad arbitration clauses in the underlying contracts, the Court nevertheless has discretion to deny arbitration of these core proceedings and would exercise that discretion to deny the motions to compel arbitration in these cases. The Federal Arbitration Act provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Correspondingly, "there will be occasions where a dispute involving both the Bankruptcy Code . . . and the Arbitration Act . . . presents a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution." *U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. and Indem. Assoc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999) (quoting *Societe Nationale Algerienne Pour La Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp.*, 80 B.R. 606, 610 (D. Mass. 1987)).

While the Court must stay proceedings if an arbitration clause is found to be applicable, the Supreme Court has acknowledged that "[l]ike any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command. The burden is on the party opposing arbitration, however, to show that Congress intended

15

to preclude a waiver of judicial remedies for the statutory rights at issue." *McMahon*, 482 U.S. at 226-27.

In assessing whether the court has discretion to refuse to compel arbitration, core bankruptcy proceedings "implicate more pressing bankruptcy concerns" than do non-core proceedings. *In re U.S. Lines, Inc.*, 197 F.3d at 639. Preferential transfer proceedings are listed as core proceedings. *See* 28 U.S.C. § 157(b)(2)(F) ("Core proceedings include, but are not limited to − (F) proceedings to determine, avoid, or recover preferences."). Section 157(b)(2)(F) clearly and unambiguously defines preferential transfer proceedings as core proceedings. *MBNA*, 436 F.3d at 109 (proceedings that "by their nature, could arise only in the context of a bankruptcy case" are core proceedings) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96-97 (5th Cir. 1987)). As claims that only exist in the context of bankruptcy and belong exclusively to the debtor in possession or the trustee, preferential transfer claims brought under § 547 are clearly core proceedings.

Deciding that a proceeding is core is not alone a sufficient basis to deny arbitration in the face of a broad form clause that otherwise covers the dispute. "[E]ven a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration." *In re U.S. Lines, Inc.*, 197 F.3d at 639. In core proceedings, a further determination is needed to show that arbitrating the dispute would severely conflict with relevant provisions of the Bankruptcy Code. "If a severe conflict is found, then the court can properly conclude that, with respect to the particular Code provision involved, Congress intended to override the Arbitration Act's general policy favoring enforcement of arbitration agreements." *MBNA*, 436 F.3d at 108. Determining whether a sufficiently severe conflict exists between the Bankruptcy Code and the

16

Federal Arbitration Act to deny the request to arbitrate "requires a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy." *Id.*

The claim at issue in *MBNA* was a post-petition violation of the automatic stay by the debtor's bank, which the court distinguished from claims in previous decisions where "resolution of the arbitrable claims directly implicated matters central to the purposes and policies of the Bankruptcy Code." *MBNA,* 436 F.3d at 110. The debtor's case was a liquidating chapter 7 case so the estate included only property in which the debtor had an interest as of the commencement of the case. *Id.* Therefore, only the debtor – and not creditors – would benefit from any recovery on the claim. The court made it clear that matters integral to the bankruptcy proceedings are within the court's discretion to deny arbitration. In contrast, the preference claims at issue here belong to the Plaintiff as assignee of the debtor in possession pursuant to the confirmed plan and are brought for the benefit of the creditors.

In *U.S. Lines* and *MBNA*, the Second Circuit clearly articulated that in certain core bankruptcy proceedings that severely conflict with the Federal Arbitration Act, the court has discretion to deny arbitration. The preference claims here are core matters that are integral to a bankruptcy proceeding. Facts common to many or most of the many hundreds of remaining adversary proceedings being prosecuted by the Liquidating Trust are likely to control the outcomes of these four adversary proceedings. Uniformity in application of the law to the facts in these federal statutory claims is furthered by federal court litigation and not arbitration. As the court stated in *OHC Liquidating Trust*:

> The result is, that certain fact situations may be expected to bring about fairly
> consistent results, wherever they are tried. To subject these matters to arbitration,
> before individuals or tribunals with little or no experience in bankruptcy law or
> practice, and with little or no concern for the rights and interests of the body of

17

creditors, of which the particular defendant is only one, would introduce variables into the equation which could potentially bring about totally inconsistent results.

*OHC Liquidating Trust*, 2005 WL 670310, at \*5.

The Coeclerici defendants argue that the New York Convention – applicable to the two cases where Coeclerici is a party, but not to the Moran and Satchuk proceedings – requires arbitration of the Coeclerici cases. But the reasoning of *Allegaert* and *Hays* applies equally to all four cases. Only claims derivative of the Debtor's rights are subject to arbitration. No such claims are asserted here. Statutory avoidance claims that belong to the trustee or debtor in possession are not subject to the Debtor's arbitration agreements. Second, even if the arbitration clauses could cover these avoidance claims, the Court nevertheless concludes that it may decline to compel arbitration of these claims.

With respect to international agreements, the Court has less discretion to deny motions to arbitrate than it does with respect to domestic agreements. "[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context." *Mitsubishi Motors*, 473 U.S. at 629. However, the Second Circuit has found that "[i]n the bankruptcy setting, congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override even international arbitration agreements." *In re U.S. Lines, Inc.*, 197 F.3d at 39.

Federal policy favoring recognition of arbitration agreements is particularly strong for international agreements. In the circumstances presented here, however, the Court concludes that there is a "severe conflict" between policies underlying arbitration

18

agreements and the conduct of this bankruptcy proceeding such that "Congress intended to override the Arbitration Act's general policy favoring enforcement of arbitration agreements." *MBNA*, 436 F.3d at 108. Therefore, the standard in *U.S. Lines* has been met and, even if the preference claims were subject to the arbitration clauses, the Court would exercise its discretion to deny the motions to compel arbitration, even as to the Coeclerici defendants.

## CONCLUSION

For the above stated reasons, the four motions to compel arbitration are **DENIED**. Separate orders will be entered in each of these cases regulating further proceedings.

**IT IS SO ORDERED.**

DATED:        July 15, 2008

_____/s/ **Martin Glenn**_____
MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

19